# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs April 1, 2026

## SPRINGFIELD HEALTH SERVICES, LLC v. SANDERLING RENAL SERVICES-USA, LLC

**Appeal from the Chancery Court for Davidson County**
**No. 25-1069-IV**      **Russell T. Perkins, Chancellor**

_____

## No. M2025-01625-COA-R3-CV
_____

The parties in the underlying action are a plaintiff hospital, Springfield Health Services, LLC, d/b/a TriStar NorthCrest Medical Center ("NorthCrest"), and defendant dialysis services company, Sanderling Renal Services-USA, LLC ("Sanderling"). Sanderling and NorthCrest executed a contract wherein Sanderling agreed to provide dialysis and telehealth services to patients at NorthCrest on a fee schedule. A disagreement arose between the parties over which party was responsible for securing payments from third-party providers, and Sanderling terminated the parties' agreement as a result. Sanderling then submitted a demand for arbitration to the Judicial Arbitration and Mediation Services ("JAMS") pursuant to the arbitration provision in the parties' contract. After the arbitrator delivered an award in favor of NorthCrest, Sanderling filed a notice of appeal pursuant to the JAMS optional appeals procedure, relying on language in the parties' contract providing that the parties had "reserve[d] the right to contest the arbitrator's decision and to appeal from any award." NorthCrest objected to application of the JAMS optional appellate procedures, arguing that the contested phrase was not an agreement to submit to the JAMS appellate process but instead reserved only the parties' statutory right to judicial review of the arbitrator's decision. JAMS appointed an appellate arbitration panel, who dismissed the JAMS appeal due to NorthCrest's objection, noting that the JAMS optional appellate procedures required both parties to agree to the appeal in writing. NorthCrest then filed an application for confirmation of the arbitration award in the trial court, to which Sanderling filed a response in opposition and a motion to compel arbitration pursuant to the JAMS appellate procedures. Deferring to the JAMS panel's decision to dismiss the appeal, the trial court denied Sanderling's motion to compel appellate arbitration and confirmed the arbitration award in NorthCrest's favor. Sanderling has appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., C.J., and CARMA DENNIS MCGEE, J., joined.

J. Michael Clemons and John Ray Clemmons, Nashville, Tennessee, for the appellant, Sanderling Renal Services-USA, LLC.

Tim Harvey and Andrew Curtis, Nashville, Tennessee, for the appellee, Springfield Health Services, LLC, d/b/a TriStar NorthCrest Medical Center.


**OPINION**

1. Factual and Procedural History


This is an appeal from an order denying a motion to compel appellate arbitration and confirming an arbitration award. The plaintiff hospital, NorthCrest, filed the application for confirmation of the arbitration award in the Davidson County Chancery Court ("trial court") following the arbitrator's award in NorthCrest's favor against the defendant, Sanderling. NorthCrest is an "acute care" hospital located in Springfield, Tennessee, and Sanderling is a provider of kidney telehealth and dialysis services. Prior to this lawsuit, NorthCrest and Sanderling had maintained a business relationship whereby Sanderling provided dialysis and telehealth services to patients at NorthCrest. To manage their business relationship, the parties executed two written contracts: an "Agreement to Provide Acute Dialysis Services" ("Dialysis Agreement") and a "Telehealth Professional Services Agreement" ("Telehealth Agreement").

The dispute that led to the instant action arose in October 2023 when the parties disagreed as to which of them was responsible under the Telehealth Agreement to bill third-party payors for Sanderling's professional fees. Sanderling believed that NorthCrest was responsible for invoicing and collecting from third-party payors while paying Sanderling's invoices pursuant to a fee schedule contained in the Telehealth Agreement. NorthCrest disagreed with this interpretation, maintaining that Sanderling was responsible for billing and collecting from these third-party payors. The parties were unable to reach an accord relative to the dispute. Consequently, Sanderling unilaterally terminated the Telehealth Agreement and the Dialysis Agreement and filed an arbitration demand on April 9, 2024, seeking recovery of $232,250.00 in outstanding invoices that Sanderling claimed Northcrest had not paid under the Telehealth Agreement. On April 24, 2024, NorthCrest filed an answer and counterclaim, asserting breach of contract for Sanderling's unilateral termination of the Telehealth Agreement and the Dialysis Agreement.

The arbitration clause found in Section 9A of the Telehealth Agreement provides in relevant part:

> Binding Arbitration[].  In the event of any controversy or dispute related to or arising out of this Agreement, the Parties agree to meet and confer in good faith to attempt to resolve the controversy or dispute without an adversary proceeding.  If the controversy or dispute is not resolved to the mutual satisfaction of the Parties within five (5) business days of notice of the controversy or dispute, either Party shall have the option of submitting the controversy or dispute to arbitration, which shall be conducted in the county and the state in which [NorthCrest] is located.  If the controversy or dispute is submitted to arbitration, the Parties shall select the arbitrator within ten (10) calendar days after [NorthCrest] notifies [Sanderling] that the controversy or dispute will be submitted to arbitration.  If the Parties are unable to agree on an arbitrator, either Party may petition the American Arbitration Association or the American Health Lawyers Association (the "Arbitration Company") for the appointment of an arbitrator according to the procedures for such appointment provided under the Arbitration Company's rules for commercial arbitration. . . .  The Parties reserve the right to contest the arbitrator's decision and to appeal from any award[.]

Pursuant to Section 9A, the parties agreed upon an arbitrator appointed by JAMS, who managed the case and conducted a final hearing spanning December 9-11, 2024.  On February 24, 2025, the arbitrator entered a detailed "Final Award" wherein she awarded damages to NorthCrest in the amount of $432,227.00 after determining that Sanderling had breached both contracts between the parties by unilaterally terminating them without cause.

Sanderling filed a notice of appeal to a JAMS appellate panel respecting the arbitrator's final award on March 13, 2025, requesting that the panel reconsider the arbitrator's interpretation of the Telehealth Agreement.  In the opening paragraph of the appeal notice, Sanderling referenced the portion of Section 9A of the Telehealth Agreement providing that the parties had "reserved the right to contest the arbitrator's decision and to appeal from any award."

On March 20, 2025, NorthCrest filed a response in opposition to appointment of a JAMS appellate panel, arguing that Sanderling's notice of appeal was a "nullity" because the parties had not agreed that the JAMS Optional Appeal Procedures ("JAMS Appeal Procedures") applied to the instant dispute.  NorthCrest asserted that Sanderling was instead required to pursue judicial review of the arbitration award "in court" pursuant to the Tennessee Uniform Arbitration Act ("TUAA") or the Federal Arbitration Act ("FAA").  In support, NorthCrest referenced the portion of the JAMS Appeal Procedures

requiring all parties to agree to submit to the appellate procedures in writing. NorthCrest asserted that Sanderling's reliance on the language in the Telehealth Agreement stating that the parties had "reserved the right to contest the arbitrator's decision and to appeal from any award" was "misplaced." Its objection notwithstanding, NorthCrest concomitantly filed a notice of cross-appeal in case the JAMS appellate panel declined to dismiss Sanderling's appeal. Sanderling filed a response to NorthCrest's objection to its notice of appeal on March 31, 2025, to which NorthCrest replied in opposition on April 2, 2025.

After the parties had fully briefed their disagreement regarding applicability of the JAMS appellate procedures and submitted these to the JAMS case worker, JAMS appointed three legal professionals to the appellate panel to consider Sanderling's appeal in May 2025. NorthCrest continued throughout the preliminary appeals process to object to the appeal via email to the JAMS caseworker and the appellate panel chairperson. On July 14, 2025, the JAMS appellate panel met via Zoom with representatives from both parties to consider their arguments concerning whether the appeal within the JAMS framework should go forward. Following the meeting, the panel entered an order terminating Sanderling's appeal and NorthCrest's cross-appeal. The order stated in relevant part:

> The JAMS Optional Appeal Procedures (A) require that all Parties have agreed in writing to the application [of] the Procedures. "The Parties may agree to the application of the Procedures at any time."

> For clarity the Arbitration Panel met on July 14, 2025 via Zoom with the [Sanderling] representative Michael Clemmons and the [NorthCrest] representative Tim Harvey. Mr. Harvey made it clear that [NorthCrest] objects to the JAMS Optional Appeal Procedures. Accordingly, the appeal is terminated for both [Sanderling's] appeal and [NorthCrest's] cross-appeal.

On July 30, 2025, following dismissal of Sanderling's appeal by the JAMS appellate panel, NorthCrest filed the case at bar in the trial court as plaintiff, seeking confirmation of the arbitration award in its favor of $432,227.00; "post-award, prejudgment interest in the amount of $118.42 per day" plus court costs; and attorney's fees. Sanderling, as defendant, filed a motion to compel appellate arbitration in opposition to NorthCrest's application. Sanderling argued that in Section 9A of the Telehealth Agreement, "both Sanderling and NorthCrest explicitly reserved the right to contest the arbitrator's decision and to appeal from any award" such that NorthCrest's "refusal" to "participate in the appellate process offered by JAMS" was in violation of the agreement.

In its motion to compel arbitration, Sanderling argued that because Sanderling and NorthCrest had agreed to arbitration in the Telehealth Agreement and because state and federal laws "favor arbitration," the court should compel NorthCrest to participate in the arbitration appeal and to submit to the JAMS Appeal Procedures. Additionally, Sanderling reasoned that the phrase, "reserve the right," in the Telehealth Agreement could not have meant merely a reservation of the "limited" judicial review that was "already available for vacating or modifying an award" under the TUAA or FAA. Instead, Sanderling urged that the arbitration clause in the Telehealth Agreement was intended to reserve any right to appeal, including those avenues of appeal provided by both the American Arbitration Association ("AAA") and JAMS. Sanderling thus concluded:

> [I]f the Courts cannot provide judicial review of an arbitration award beyond the limited grounds provided in the FAA and TUAA, and parties cannot agree by contract to judicial review of an arbitration award on grounds expanded beyond those provided by the FAA and TUAA, then the [Telehealth] Agreement's reservation of the "right to contest the arbitrator's decision and to appeal from any award" becomes superfluous and pointless.

NorthCrest filed a response in opposition to Sanderling's motion to compel appellate arbitration, asserting that the appellate panel had "already decided that the parties' arbitration agreement does not provide for arbitrators to conduct a substantive appellate review."

NorthCrest sent a notice of hearing regarding its application to confirm the arbitration award, to which Sanderling objected, claiming that NorthCrest had yet to respond to Sanderling's motion to compel and that if NorthCrest opposed the motion to compel, the trial court "must proceed summarily to decide the issue and order the parties to arbitrate." In turn, Sanderling relied on section 29-5-308(a) of the TUAA, which requires a court to "order the parties to arbitrate" over the refusal of one party in instances where the parties have previously agreed to arbitration.

On September 15, 2025, NorthCrest responded in opposition to Sanderling's motion to compel arbitration, reiterating that the JAMS appellate panel had already decided that the parties' arbitration agreement did not provide for arbitrators to conduct a "substantive appellate review." NorthCrest posited that Sanderling's opposition to NorthCrest's application to confirm the arbitration award was "basically a request for the court to modify or vacate" the JAMS appellate panel's order dismissing Sanderling's appeal. Moreover, NorthCrest stressed that because the trial court's review was limited to the "statutory grounds for vacating or modifying an [arbitration] award," the court should deny Sanderling's motion to compel because Sanderling had not presented or argued any such statutory grounds for vacatur or modification. NorthCrest additionally contended that because Tennessee law governed the Telehealth Agreement, the only

- 5 -

rights the parties could have "reserved" in Section 9A of the agreement was the statutory right to contest an arbitrator's decision by application or petition to a trial court or a court of appeals. In addition to the post-award, prejudgment interest that NorthCrest had previously requested, NorthCrest sought attorney's fees incurred defending Sanderling's motion.

On September 19, 2025, the trial court conducted a telephonic hearing on Sanderling's motion to compel arbitration and subsequently denied the motion in an order entered on September 29, 2025. In the order, the trial court deferred to the JAMS appellate panel's determination that the appeal could not go forward through the optional JAMS appellate process by reason of NorthCrest's objection to the appeal. In the alternative, the trial court reasoned that the language in Section 9A of the Telehealth Agreement "merely reserves the existing right that Sanderling had through the JAMS process . . . to appeal if NorthCrest did not object to the appeal" and "also preserves the parties' limited existing right to refer an arbitration award to a court of competent jurisdiction[.]"

The trial court instructed NorthCrest to submit a proposed final order granting NorthCrest's application to confirm the arbitration award. NorthCrest did so, and on September 30, 2025, the trial court entered an order and final judgment awarding to NorthCrest $432,227.00; post-award, prejudgment interest totaling $25,460.30 through September 30, 2025 (the date the final order was entered); additional interest in the amount of $118.42 per day until the entry of final judgment; and attorney's fees in the amount of $19,279.00.

On October 3, 2025, Sanderling filed a motion to alter or amend the final judgment, propounding that because the order bore only the signature for NorthCrest's attorney, the order should not have been entered the day after the order denying Sanderling's motion to compel arbitration but rather should have been held for entry by the clerk for three days pursuant to "Local Rule 33.02." Sanderling advanced that in entering the final order and judgment so quickly, the trial court had prevented Sanderling from exercising its immediate right to appeal the order denying Sanderling's motion to compel arbitration pursuant to section 29-5-329(a)(1) of the TUAA. NorthCrest opposed the motion on grounds that "nothing about the Final Judgment prevents Sanderling from exercising its right to appeal the order denying the motion to compel arbitration." Further, NorthCrest pointed out that Sanderling had not filed an objection or alternative to NorthCrest's proposed final order and had not identified any errors of law or miscarriage of justice militating alteration or amendment of the final order. Sanderling subsequently filed a timely notice of appeal with this Court. Following an expedited hearing, the trial court denied Sanderling's motion to alter or amend in an order entered on October 22, 2025, and ordered a stay of execution of the final order pending the outcome of this appeal.

## II. Issues Presented

Sanderling has raised the following issue for our review, which we have restated slightly:

1.  Whether the trial court erred in denying Sanderling's motion to compel arbitration and in confirming the arbitration award when the Telehealth Agreement expressly provides that "the parties reserve the right to contest the arbitrator's decision and to appeal from any award," and when the only forum in which such an appeal can occur is appellate arbitration.

NorthCrest presents the following additional issues:

2.  Whether the JAMS appeal panel's order terminating Sanderling's appeal may be vacated or modified under the TUAA.

3.  Whether the arbitration clause in the Telehealth Agreement preserves the parties' existing rights to judicial review of the arbitration award or creates a new right to have arbitrators conduct an appeal on the merits.

4.  Whether NorthCrest is entitled to its attorney's fees incurred on appeal pursuant to Tennessee Code Annotated § 29-5-326(c).

## III. Standard of Review

At issue in this appeal is the trial court's September 19, 2025 order denying Sanderling's motion to compel appellate arbitration and its order confirming the arbitration award. "[W]e review a grant or denial of a motion to compel arbitration under the same standards that apply to bench trials." *Mitchell v. Kindred Healthcare Operating, Inc.*, 349 S.W.3d 492, 496 (Tenn. Ct. App. 2008) (citing *Spann v. Am. Express Travel Related Servs. Co.*, 224 S.W.3d 698, 706-07 (Tenn. Ct. App. 2006)). As such, our review of the trial court's order denying the motion to compel arbitration is *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

Regarding judicial review of an arbitration award generally, "the TUAA governs the scope of judicial review of arbitration awards." *See Arnold v. Morgan Keegan & Co., Inc.*, 914 S.W.2d 445, 447-48 (Tenn. 1996) (quoting *Int'l Talent Grp., Inc. v. Copyright Mgmt., Inc.*, 769 S.W.2d 217, 218 (Tenn. Ct. App.1988)); *Pugh's Lawn Landscape Co. v.*

*Jaycon Dev. Corp.*, 320 S.W.3d 252, 260 (Tenn. 2010).[1]  The "standard to be applied by the trial court is a narrow one.  It is well established that courts should play only a limited role in reviewing the decisions of arbitrators."  *See Arnold*, 914 S.W.2d at 448 (citing *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987)).

Our Supreme Court has explained the standard of review that this Court should employ when reviewing a trial court's decision to confirm an arbitration award as follows:

> Our attitude toward review of arbitration decisions is deferential, as is our standard of review.  Under this deferential standard of review, courts are not permitted to consider the merits of an arbitration award even if the parties allege that the award rests on errors of fact or misrepresentation of the contract.  *Misco*, 484 U.S. at 36, 108 S. Ct. at 369.

> Judicial review of arbitration decisions is statutorily limited, and any judicial review must be conducted within those limits.  Nevertheless, the standard of review to be used by the intermediate court in reviewing a trial court's decision that refuses to vacate, or confirms, an arbitrator's award is an issue.  Most of these controversies will be determined by the facts, and the intermediate court should accept those facts as found unless clearly erroneous.  *First Options of Chicago* [*v. Kaplan*], 115 S. Ct. [1920,] 1926 [(1995)].

> Matters of law, if not able to be resolved by resort to the controlling statutes, should be considered independently, with the utmost caution, and in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution.

*Arnold*, 914 S.W.2d at 450.

Our standard of review for contract interpretation is "de novo on the record according no presumption of correctness to the trial court's conclusion of law."  *Old Hickory Coaches, LLC v. Star Coach Rentals, Inc.*, 652 S.W.3d 802, 812 (Tenn. Ct. App.

---

[1] The parties agreed that the applicable rules of law governing arbitration of their dispute were the FAA, the JAMS Rules, and that the "substantive law is the law of Tennessee."  Concerning the interplay between the FAA and the TUAA, our Supreme Court has observed "that the language of the judicial review provisions in the TUAA are substantially similar to those in the FAA."  *See Pugh's Lawn Landscape Co.*, 320 S.W.3d at 259.  To the "extent that these statutory schemes are different, the judicial review provisions in the TUAA are more restrictive."  *See id.*  NorthCrest filed its application for confirmation of the arbitration award pursuant to the provisions of the TUAA and Rule 25 of the JAMS Rules.

2021) (citing *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006)). "[A] cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties." *Old Hickory Coaches, LLC*, 652 S.W.3d at 812-13 (citing *Allstate Ins. Co.*, 195 S.W.3d at 611).

## IV. Telehealth Agreement Arbitration Clause

Sanderling asserts that the trial court erred by not granting its motion to compel appellate arbitration, arguing that the parties had bargained for the right to appeal the arbitrator's award in Section 9A of the Telehealth Agreement with the words: "The parties reserve the right to contest the arbitrator's decision [and] to appeal from any award." Specifically, Sanderling posits that the language in Section 9A can only be reasonably interpreted as reserving a right to appeal within the JAMS appellate process because there exists "no right to a judicial appeal on the merits." In its order denying Sanderling's motion to compel arbitration, the trial court explained:

> Sanderling's attempted appeal of the arbitration award to [a JAMS] Arbitration Panel relied on a sentence from the parties' Telehealth Agreement which provided that "[t]he parties reserve the right to contest the arbitrator's decision [and] to appeal from any award." . . . NorthCrest objected, asserting that this was merely a reservation of an existing right to appeal and not the creation of a free-standing right outside the procedures governing any arbitration convened under the Telehealth Agreement. Given that Sanderling's appeal under the [JAMS] Optional Appeal procedures relied on the same language to the parties' Telehealth Agreement that is being relied upon here and given that NorthCrest specifically objected to the Appeal under the Optional Appeals procedure addressing this language, the Court defers to the Arbitration Panel's determination that the appeal could not properly be maintained. Alternatively, if the Court is required to make an independent ruling on whether the disputed language in the Telehealth Agreement provides the right to Sanderling to appeal the arbitration award over NorthCrest's clear objection, the Court concludes that the provision stating that "[t]he parties reserve the right to contest the arbitrator's decision to appeal from any award" merely reserves the existing right that Sanderling had through the JAMS process (or some other applicable arbitration process) to appeal if NorthCrest did not object to the appeal. It is undisputed that NorthCrest objected to the appeal. This provision also preserves the parties' limited existing right to refer an arbitration award to a court of competent jurisdiction for review under applicable law.

Sanderling posits that this determination constituted error because there is "no right to a judicial appeal on the merits" under the TUAA or the FAA. Sanderling thereby

argues that the only forum in which a substantive appeal of an arbitration award could have occurred—and that the parties could have agreed to participate in via the Telehealth Agreement—was the appellate arbitration process. Sanderling continues that although the trial court "correctly recognized that the clause [in Section 9A] reserves an existing right to appellate arbitration," the court erred by "allowing NorthCrest to nullify that right through a unilateral refusal to participate." Accordingly, Sanderling insists that NorthCrest should be compelled to submit to the appellate arbitration process.

In turn, NorthCrest frames the issue as a question of the arbitrability of Sanderling's appeal. According to NorthCrest, the JAMS Comprehensive Arbitration Rules and Procedures ("JAMS Rules") granted the authority to the JAMS appellate arbitration panel to determine whether Sanderling's appeal could go forward, and the panel properly exercised that authority by dismissing Sanderling's appeal.[2] NorthCrest asserts that the trial court's review of the JAMS appellate arbitration panel was limited by both the TUAA and the FAA and, following that narrow standard of review, the court properly deferred to the panel.

It is undisputed that the parties agreed to adhere to the JAMS Rules when they entered arbitration and that they submitted to application of the JAMS Rules throughout the arbitration process. By adopting the JAMS Rules, the parties agreed "that disputes regarding the scope of their arbitration agreement would be submitted to the arbitrator." *See Carbon Fiber Recycling, LLC v. Spahn*, No. E2024-00741-COA-R3-CV, 2025 WL 2806423, at *4 (Tenn. Ct. App. Oct. 2, 2025); *see generally Frizzell Constr. Co., Inc. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 86 (Tenn. 1999) (holding that "parties may choose the arbitration law by which they intend to be governed."). Additionally, the parties mutually agreed in Section 9A of the Telehealth Agreement that "any controversy or dispute related to or arising out of" the Telehealth Agreement could be submitted to arbitration. This includes interpretation of the arbitration clause.

Rule 11 of the JAMS Rules provides instruction regarding the arbitrator's authority to determine arbitrability and to interpret arbitration clauses generally:

(a) Once appointed, the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules and conduct of the Arbitration Hearing. The resolution of the issue by the Arbitrator shall be final.

(b) Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the

---

[2] The JAMS Comprehensive Arbitration Rules & Procedures are available online at https://www.jamsadr.com/rules-comprehensive-arbitration.

agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

Here, once the arbitrator rendered and entered the final award in NorthCrest's favor and Sanderling appealed the decision within the JAMS framework, the JAMS appellate procedure, which is a subset of the JAMS Rules, came into play. Regarding this procedure, the JAMS Rules provide:

Rule 34. Optional Arbitration Appeal Procedure

The Parties may agree at any time to the JAMS Optional Arbitration Appeal Procedure. All Parties must agree in writing for such procedure to be effective. Once a Party has agreed to the Optional Arbitration Appeal Procedure, it cannot unilaterally withdraw from it, unless it withdraws, pursuant to Rule 13, from the Arbitration.

The introductory paragraph to the JAMS Optional Arbitration Appeal Procedures (effective February 1, 2025) ("JAMS Optional Appeal Procedures")[3] provides that "where the parties agree pre- or post-dispute to the JAMS Optional Appeal Procedures, the parties can realize all the benefits of arbitration with the added peace of mind that comes with the right to appeal." Section (A) of the JAMS Optional Appeal Procedures clarifies that the appellate procedures "apply where all Parties have agreed in writing to the application of the [JAMS Optional Appeal] Procedures."

Pursuant to these provisions, NorthCrest filed a timely written objection to the application of the JAMS Optional Appeal Procedures stating that it did not agree to application of the procedures. NorthCrest additionally filed a separate notice of cross-appeal in the event that the JAMS appellate panel determined that Sanderling's appeal could go forward pursuant to the arbitration clause of the Telehealth Agreement. Thereafter, the JAMS caseworker began the process of appointing three neutral JAMS member-attorneys to serve on the appellate panel. When informed that the process had begun, NorthCrest's attorney emailed the JAMS administrator to reiterate NorthCrest's objection to the application of the JAMS Optional Appeal Procedures, which the administrator acknowledged via return email.

Once the appellate panel was established, the panel conducted a meeting via Zoom during which representatives for both parties argued concerning whether Section 9A of

---

[3] The JAMS Optional Arbitration Appeal Procedures are available online at https://www.jamsadr.com/appeal.

the Telehealth Agreement provided for an appeal pursuant to the JAMS Optional Appeal Procedures.[4] In so doing, the JAMS panel was exercising the authority conferred upon it by Rule 11 of the JAMS Rules to determine the scope of the parties' arbitration agreement as a preliminary matter. Following the meeting, the panel entered an order terminating the appeal predicated upon NorthCrest's objection to the application of the JAMS Optional Appeal Procedures.

According to Sanderling, the Zoom meeting conducted by the panel "lasted approximately three minutes," and the panel subsequently "terminated [the JAMS appeal] for no other reason than NorthCrest's refusal to participate in the JAMS appellate process." Sanderling contends that "there was no decision made by the JAMS appellate panel regarding whether the [Telehealth] Agreement provides for appellate review by an arbitration tribunal." Respectfully, we disagree. Although the JAMS appellate panel did not mention the Telehealth Agreement in its order dismissing Sanderling's appeal, there is no question that the JAMS appellate panel reviewed the Telehealth Agreement and the related written arguments of the parties prior to the dismissal.

The record demonstrates that the parties fully briefed the issue concerning whether the parties had mutually agreed to adhere to the JAMS Optional Appeal Procedures and that the JAMS administrator and appellate panel were aware of those materials. The submitted materials were extensive, including the Telehealth Agreement, the original arbitrator's scheduling orders and final award to NorthCrest, Sanderling's notice of appeal, NorthCrest's objection to the notice of appeal and to the application of the JAMS Optional Appeal Procedures, NorthCrest's provisional cross-appeal, Sanderling's response to NorthCrest's objection to Sanderling's notice of appeal, and NorthCrest's reply to Sanderling's response. Each of these materials was made available to the JAMS appellate panel, the chairperson of which informed counsel for Sanderling that the panel had reviewed the submissions.

We reiterate that the JAMS appellate panel maintained the authority to interpret the scope of the arbitration clause found in Section 9A of the Telehealth Agreement pursuant to Section 11(b) of the JAMS Rules as well as the provisions of the Telehealth Agreement itself. *See Frizzell Constr. Co.*, 9 S.W.3d at 86 ("[P]arties may choose the arbitration law by which they intend to be governed."). Furthermore, when Sanderling filed a notice of appeal to the JAMS appellate panel and NorthCrest filed its objection, the parties mutually submitted their dispute to the panel of arbitrators. Exercising this authority, the JAMS appellate panel considered the written and oral arguments of the parties and dismissed the appeal, rejecting Sanderling's interpretation of the arbitration clause as reserving a "right" to application of the JAMS Optional Appellate Procedures.

---

[4] The JAMS Optional Appeal Procedures do not require a hearing on any matter unless "all parties request it." *See* JAMS Optional Appeal Procedures Section (I).

The trial court's review was limited with respect to both the arbitrator's initial award and the JAMS appellate panel's decision to dismiss Sanderling's appeal. As our Supreme Court has explained:

> It is well established that courts should play only a limited role in reviewing the decisions of arbitrators. *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36, 108 S. Ct. 364, 369, 98 L. Ed. 2d 286 (1987).
>
>> [W]here the party has agreed to arbitrate, he or she, in effect has relinquished much of [the right to a court's decision on the merits]. The party still can ask a court to review the arbitrator's decision, but the court will set that decision aside only in very unusual circumstances.
>
> *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, ____, 115 S. Ct. 1920, 1923, 131 L.Ed.2d 985 (1995) (emphasis added) (citations omitted). The trial court is limited by the provisions of the statute which allow a vacation or modification of an award. *See International Talent Group*, 769 S.W.2d at 218.
>
> * * *
>
> The limiting language of the statutes governing vacation and modification of arbitration awards evidences an intent to limit severely the trial court's authority to retry the issues decided by arbitration.

*Arnold*, 914 S.W.2d at 448 (footnotes omitted). Adhering to this standard, and in the absence of any argument or evidence supporting vacatur, modification, or correction of the panel's order of dismissal, the trial court properly deferred to the JAMS panel's decision to dismiss Sanderling's appeal. Accordingly, we affirm the trial court's denial of Sanderling's August 2025 motion to compel appellate arbitration.

The trial court also properly granted NorthCrest's application to confirm the arbitration award pursuant to section 29-5-323 of the TUAA. Section 29-5-323 provides that when a party petitions for an order confirming an arbitration award, "the court must issue a confirming order, unless the award is modified or corrected pursuant to § 29-5-321 [providing for change of the award by the arbitrator] or § 29-5-325 [providing for modification or correction by the trial court], or is vacated pursuant to § 29-5-324." Respecting the arbitrator's award to NorthCrest, Sanderling did not present or argue before the trial court any of the enumerated grounds for vacatur or modification of an arbitration award found in Tennessee Code Annotated §§ 29-5-321, -324, or -325. Furthermore, in this appeal, Sanderling has not presented any postulate that the trial court's factual findings were clearly erroneous with respect to its confirmation of the

- 13 -

arbitration award. *See Arnold*, 914 S.W.2d at 450 (citing *First Options of Chicago*, 115 S. Ct. at 1926). For these reasons, we affirm the trial court's order confirming the arbitration award.

## V. Attorney's Fees on Appeal

NorthCrest seeks its attorney's fees and costs on appeal pursuant to Tennessee Code Annotated § 29-5-326(c) of the TUAA. Section 29-5-326(c) (West July 1, 2023, to current) provides:

> On application of a prevailing party to a contested judicial proceeding under § 29-5-323, § 29-5-324, or § 29-5-325, the court may add reasonable attorney's fees and other reasonable expenses of litigation incurred in a judicial proceeding after the award is made to a judgment confirming, vacating without directing a rehearing, modifying, or correcting an award.

As this Court has explained:

> The discretion to award attorney's fees on appeal in a proceeding of this nature rests within the discretion of the Court. *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). When considering a request for attorney's fees on appeal, we also consider the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the requesting party sought the appeal in good faith, and any other equitable factors relevant in a given case.

*Chase v. Chase*, 670 S.W.3d 280, 304-05 (Tenn. Ct. App. 2022) (quoting *Darvarmanesh v. Gharacholou*, No. M2004-00262-COA-R3-CV, 2005 WL 1684050, at *16 (Tenn. Ct. App. July 19, 2005)). Upon careful review, we discern that this appeal was filed in good faith and that each party maintains the ability to pay its own attorney's fees. We accordingly exercise our discretion by declining to award NorthCrest its attorney's fees and costs on appeal. *See id.*

## VI. Conclusion

For the above-stated reasons, we affirm the trial court's denial of Sanderling's motion to compel appellate arbitration and its order confirming the arbitration award. We deny NorthCrest's request for attorney's fees on appeal. This matter is remanded to the trial court for execution of the judgment confirming the arbitration award and for collection of costs assessed below. Costs on appeal are assessed to the appellant, Sanderling Renal Services-USA, LLC.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE